In the next case, People v. Geoff Grootenboer I'll let you pronounce it for the record, I think. Mr. Starman? Yes, sir. Approach. When you're ready. May it please the court, gentlemen, I heard someone speaking about how old he was and how many years he's practiced law, and I don't want to reveal that information to you at this time, but I've been here for 50 years, at least. But I'll get on. Since it's lunchtime, I'll get on with the facts. Your Honors, this is an appeal from the Circuit Court of St. Clair County based upon the rescission, the failure to rescind the summary suspension, or the denial of the summary suspension rescission. Now, the facts of this case are relatively clear. Officer Perry, an East St. Louis police officer, testified that on June 1st, 2011, he received a dispatch, this is important now, that he received a dispatch from the dispatcher saying that gunshots were being fired at 22nd and Market Street, that's down by the New York Clingers, if you know East St. Louis on the south side. And he said he'd been an officer for 10 years, that he had only had a couple of DUI arrests, and that on his way down there to 22nd and Market, he was either flagged down or flagged down, or did flag down, Sandra DeWalt and Sandra Dinsbury, and asked them if they heard the shots or if they knew about the shots. And they said they did, and they testified. And there's the question about whether or not they were cuffed. But moving on then, when they were cuffed, there's no question that they were completely under the control of the officer. The officer then charged my client with aggravated unlawful use of weapons after he searched the vehicle. Now, my fellow was separated from the vehicle, so this was a violation of Gant v. Arizona, because the vehicle, the .40 caliber, was in the car, and my client could not get to it or reach it if he wanted to, to harm the officer. So that search itself was illegal, pursuant to Gant v. Arizona. Secondly, he was charged with aggravated unlawful use of weapons, 24-1-6-8-1-3-C, Chapter 50, when in fact they asked him if he had an FOID card, and he had an FOID card on him, which would clearly obviate any charge at all, because that is a premarital requirement under the statute. And eventually the case was kicked out, per se, the state's attorney threw the case out because they knew it was not a valid charge. So, judges of this court, we have a stop, we have a controlled arrest, he's under arrest, clearly it's not an inquiry, he's bent over a card, he's either handcuffed or he's clearly under the control of the officers for an offense that did not occur. That did not occur. There was no offense. No criminal activity whatsoever. But doesn't there just have to be reasonable suspicion to stop the defendant? Well, I want to get to Vasquez. I think that that is dealt with. In my brief, I want to say that, okay, reasonable suspicion. Now, there are in Illinois three types of encounters. I want to answer your question. One is a consensual encounter, which this clearly was not, which involves no coercion, detention, and did not implicate the Fourth Amendment at all. Okay. The second one is a brief investigation, detention, which must be supported by reasonable, articulable suspicion or criminal activity, which is what the state maintains that this was, or arrest, which must be supported by probable cause. And these three were all set out in Vasquez and Lundeman and these cases. Now, the question to stop, the question of one, two, three, the difference between two and three is whether the defendant was under the control, restraint, an arrest by Sergeant Ike or the other officer, which, if you read the factual situation here on page 19, Officer Perry said he was clearly under the control, restraint, and arrest by Officer Long. And that is on page 18 and 19 of the report of proceedings. Now, the next question is, of course, we've already dealt with Arizona v. Gant, that there was no offense committed. No offense committed. Now, the question then is, what did Officer Perry say in his sworn statement to raise an issue of probable cause? Well, this is what he said. He said that in the sworn statement, if I can find it here, it's on page of the record here, it's on the page of, well, it's a separate document. It says, sworn statement of enforcement of the report. I have complied with section 11-501 by reasonable grounds to believe the restee was in violation of 11-501, which is the DUI situation, the DUI statute. Or a similar provision of the local ordinance. Arrestee was observed firing a handgun and attempting to flee the area. Now, the officer, in his testimony, clearly states he did not see the arrestee fire a weapon. He did not see the arrestee flee. So the entire sworn statement is false. It's a false statement. It's a totally false statement. Now, I want to read to you also page 18 of the record, and before I get to my two cases. He advised Officer Long to stop the vehicle. So Officer Long stopped the vehicle. Correct. Let me ask you this question. Why did Officer Long stop the vehicle? Probable cause. This is what the officer said. Probable cause of fleeing from the area where shots were fired. All right. And as a matter of fact, you put that down in your sworn statement on the arrest. Isn't that correct? Arrestee was observed firing a handgun and attempting to flee the area. Isn't that what you said on the road on 11-501? No. Well, finally admits that that's what he said. And then when I showed him Exhibit 3, he said yes. And then the following page. Well, at that point, that's why both of them were placed in custody. That's Willie Graves was in the car, too. Yeah. And don't you know for sure whether either one of them did any shooting because you didn't see it? Isn't that right? That's correct. All right. Thank you very much. So so there's two guys in the car and this officer Perry didn't see either one of them. Officer Ike, Officer Long didn't testify in this proceeding. And my guy had an F.O.I.D. card. Now, now, next page. And page in line with OK, when you got there, they were bent over the car and searched. That's correct. So they were already in the procedure and the following page. While you were doing your investigation there at the scene, you've already said that you did not see him fire a gun. That's correct. You didn't see any firearm. That's right. And you didn't find any result of the search of the person. That's correct. And you did ask him if he possessed a firearm's I.D. card. Yes. And all that you did. Yes. And he did have a firearm's I.D. card. Yes. So that brings us back to the situation, the standard of review. Now, in a semi-suspension situation under the O'Connor, People v. O'Connor, which I've cited on my argument, it is true that the defendant bears the burden of establishing by a preponderance of evidence primary face in case of rescission. The burden then shifts to the state to prove evidence justifying the suspension. But I'm saying to you that this is all trumped. If you follow me, this is all trumped by the fact that the whole situation has to be based upon probable cause if it falls within the Fourth Amendment, which it does in this particular case because they were arrested and detained. So if you find there was no probable cause to stop these guys, then this standard of review with respect to the civil 501, the civil preponderance of evidence, really isn't important or isn't germane to the issue of the case. The question is whether there was probable cause to arrest that justified the basis of Terry v. Ohio in the case. Now, I would like to, I would like, there's just a progeny of cases. You know that since Terry was decided in the 60s, there's probably been hundreds and thousands of federal cases and state cases. Illinois seems to be a better state to get busted in than the federal case because they seem to give you more, the Constitution seems to give you more safeguards. But I want to read to you, I want to read to you the case of Smully. That's a dandy, dandy, dandy case for me. That's People v. Smully. Here we got Smully, apparently this was June 5th, 2009. He was dining with a friend at Voltaire's restaurant, had two glasses of wine with dinner, and after having an argument with Woodall, his girlfriend, he drove to a bar called Redstone where he had a glass of wine. He ordered another glass of wine at Redstone, but did not finish it. After leaving Redstone, the defendant drove to a gas station where he was enclosed, where he was sitting there in his car with the key to the ignition cooling off because he'd probably upset his girlfriend. Okay. A dispatch came. Now, this dispatch is an important thing because the dispatcher called and somebody called and said, there's a possible DUI. Johnson, the officer advised by the dispatch, observed, they observed a subject drinking at the Redstone and was concerned about his driving. The complaint thought that the subject was drunk. The complaint was following the subject, who was driving a silver jeep, and she relayed to the police officer that the vehicle license plate location and so forth. All right. The defendant moved to coerce and suppress this under Lindley, L-I-N-L-E-Y, and other cases. The point, the issue in this case, the point at which the seizure occurred, Johnson had no personal knowledge, that's police officers, had no personal knowledge of any facts suggesting the defendant was committing or about to commit a crime. They cited Lindley, the cocaine use. We summarized the general principles apply in Terry is based upon facts not personally known to the officer who effected this stop. Heroin. Knew nothing. Came up, knew nothing. Didn't know about the gunshots, didn't know this, didn't know that. Bingo. Got his information from the dispatcher, passed, and the officer is gone. Now, they also cite Lindley. This was a winner for Smalley. According to the information relied by the dispatcher to Johnson and Jermaine questions whether the stop was supported by reasonable suspicion that the defendant had committed or was about to commit a crime. What Johnson knew, based upon the dispatch, was that the informant had observed an individual drinking at an establishment called Redstone. This is a better case for conviction than my case, because someone said they had observed it. The informant thought that the tip was drunk. She was concerned about him driving. The subject was driving a silver jeep. There was no evidence that the informant provided her name or that he contacted the police through an emergency number. The tip was unreliable. That statement came from an anonymous source that was unreliable. The source of the other information were police officers he works with, and they're considered reliable. Can't he base his decision on what the other officers know? Yes, but what did the other officer know? It doesn't say what the other officer knew. What did Officer Ike know? What did he know? There's no evidence of what he knew. I agree with you. There's cases that say that if you get information from another police officer other than the dispatcher, it may be reliable. Also, if you know the informer, Dan Berry and the other guy, if those two gals had been known to my officer and he said, oh yeah, these are reliable women, I took the information, but they didn't know where the shots were coming from. Now, another point is this. If the police officer had been on his toes, what if he had charged these two guys with discharging a firearm in the city of East St. Louis? There may be a reasonable suspicion based upon that, but he charged them with something completely ludicrous. It had no bearing and nothing else or anything to do with the situation. Plus, he did not tell the truth on his sworn statement. Now, let me also follow up with the DUI situation. Let's assume there was no probable cause to stop it. Let's assume that the stop was illegal. Let's assume Dan v. Arizona that finding the gun was illegal. Let's assume that the FOIA card was there and they shouldn't charge you with offense. What about the smell of alcohol? And what about the bloodshot eyes? Now, I cite to you Souther's, which is a very long case. It's not in my brief, I'm sorry, but I will supply it at a later time. It's the exclusionary rule. It's the exclusionary rule. If the stop and the arrest has no probable cause, the exclusionary rule allows the court to prevent evidence from being used at trial, which was gathered by the police in violation of defendant's Lord Amendment rights. Southerland, People v. Southerland, 223, 2nd, 185, 187, 206. H on that case, which means O. Now, that's one-son law, that's fruits of the poison tree doctrine. It's just cited clearly in Illinois as opposed to the old one-son case. It says it's an exclusionary rule. You can't use anything based upon the illegal search and seizure. Now, also, let's take, let's say that, let's go another step further. Was there ever any field sobriety test? No. Was there any stigmas test? No. Was there a heel-to-toe test? No. Was there a one-legged stand test? No. No. I mean, how many DUI cases has this court heard on the summary suspension? I'm sure a million, but at least every one of them probably had the field sobriety test as a precursor to requiring a guy to go take a breathalyzer. There's none here. There's no evidence that they ever asked him. All the officer said here is he was in no condition to take any field sobriety tests. So, the officer then surmised, based upon every report that you've ever seen in the United States of America and Illinois, what report have you ever seen that doesn't say the defendant had bloodshot eyes? What report have you ever seen that the state of Illinois police officer says, the smell of alcohol? I mean, this is a standard, generic thing that all the officers say in every, every report. And it doesn't mean a hoot, because the cases say that, I cited these cases in my, that this alone, this alone doesn't give the officers any probable cause. This thing alone doesn't do that. Bloodshot eyes, odor of alcohol, doesn't mean a hoot. And here are the cases on that. Didn't he also try to perform the horizontal nystagmus test, but he couldn't because he was not able to stand up straight. And their instructions are that if somebody's in that kind of capacity, don't go forward with the test. Judge, I would really like that, if they had taken a video or something to show you objectively that this could not be done. There was no video taken. There was, there had to be a video in the car. We recently know that the state of Illinois, maybe two or three months back under that case, is now requiring all videos of investigations, all video of police officers. With this officer going all over the place with his testimony, testifying to all this other stuff, different stuff, not telling the truth on the sworn statement, are you to think that because there was, because he said that this guy was no condition to give a test, he didn't, I don't know that he really in fact said that, but he did say something like that. But if you had a video to look at, your honor, that'd be a different story, wouldn't it? And that's why they put these videos on police cars and in interrogation rooms. Thank you. Okay. Well, you've got rebuttal. We've got time on rebuttal. And again, when you're ready, please proceed. Thank you. That is all of the discussion about the propriety of defendant's arrest for unlawful use of a weapon. It does not matter whether there was a Gantt versus Arizona violation here. It does not matter whether the defendant had a valid point card or not. What matters, as Justice Weinstein, you pointed out, is whether there was reasonable suspicion. Very recently, this week, in fact, I think, maybe last week, the Illinois Supreme Court decided Peeble versus Hackett. And the thing I really liked about Hackett is it pointed out that courts and police officers are always, they say probable cause, and then they say reasonable suspicion, and then they say probable cause. And I was amazed at the number of times in the briefs and in the oral arguments in Hackett that the terms were used interchangeably. They are not. Reasonable suspicion is a significantly lower standard than probable cause. And reasonable suspicion is all that is required to stop a car briefly. What part of this are you talking about the reasonable suspicion? Is that the initial stop? Yes. The reasonable suspicion goes to the initial stop. And so the summary suspension was based on evidence that Officer Perry saw himself or heard himself. And so here's what the facts are leading up to the stop. Officer Perry received a report of shots fired in the vicinity of 59th Street and State Street. The radio report indicated that the subject was possibly armed with a handgun. Certainly a dangerous situation in a city like that. Officer Perry was very close. So he heads to the location, arrived very quickly. As he approached this intersection, he met not anonymous sources, as the defendant contends in his brief, but two women identified as Sandra DeVault and Sandra Lansbury, who were residents of the area. They approached Officer Perry and they pointed to the warehouse where they had heard the shots coming from. They didn't see shots, but they heard shots. More importantly, crucial to this case, is that while Officer Perry is taking this information from these two named witnesses, he hears shots coming. He's 100 feet from this warehouse and he hears shots. This is if, first of all, if that's all he can. He wasn't even talking to these two women. He's just headed to the scene and he's 100 feet from this warehouse and he hears shots coming from it. Boy, if he immediately after that, a black Durango pulls out. If that's all that happened, if that police officer didn't have reasonable suspicion to stop that car, I don't know what reasonable suspicion is. This is what distinguishes this case from the cases cited in the defendant's brief. There was no corroboration in Smulik that the defendant relies on so strongly. Here, not only do we have corroboration of witnesses' testimony, but we actually have a police officer through his own senses acquiring sufficient evidence by hearing shots coming from a specific location very nearby. He has right then and there enough reason to stop. The other officer who was even closer, Officer Long, was the officer that made the stop. However, it's again important. Officer Perry, when he hears the shot, he looks at the warehouse. He sees a black Durango leave the warehouse. That black Durango never gets out of his field of vision. He sees the stop. He sees the defendant exit the driver's seat of the car. So, I'm going to stop there. That's the end of the, was there reasonable suspicion to stop the car? And my argument is absolutely yes. There was a report of shots fired. There were witnesses that pointed to the location of the shots fired. The officer heard shots fired from the warehouse, and immediately thereafter, they see a black Durango pull out of the warehouse. And the officer sees this defendant get out of the driver's seat of this car. That's a reasonable suspicion to stop the car. So, he didn't need to prove that the defendant was guilty of the gun charge. He didn't need probable cause that the defendant was guilty of the gun charge. He didn't need probable cause the defendant was drunk. He needed reasonable suspicion, and that he had. Let me ask you this. You may be about to get to this, but when is he placed in custody, and is that important in this case? It is my recollection of the record that, well, I'm going to give you the short answer. I don't think it is. Okay. Let me answer the first part, and then I'll see if I agree with you. When was he placed in custody? Officer Long had stopped the car, and as I say, Officer Perry saw that he arrived so quickly on the scene that he actually sees the defendant getting out of the car and seeing Willie, somebody that was the other person in the car. They were not handcuffed. They were not, you get the impression that they were like, spraddled out of the car. But they were with the first police officer when Officer Perry arrived. So, it is prior to Officer Perry observing or smelling the alcohol or looking at his eyes? Yes. So, is it the station? The stop is prior to that, yes. Okay. Would he have been in custody prior to him making those observations? I don't believe he was, because they were stopped on reasonable suspicion, and certainly a police officer under Terry can take appropriate actions to protect himself. I mean, we have in Terry itself the frisk, the pat-down. Here we have shots fired from warehouse, guns pulling out of warehouse, and so under the auspices of the Terry stop, it is certainly reasonable for the police officers to determine whether they themselves are safe. So, it would be my contention that at the time that, because we're talking about a minute at most from the, if he's seeing the defendant getting out of the car, you know how close he is, and he just walks up to him. As he's getting, he gets out of the car, Officer Perry walks up to him. And so, it is at this point that, again, here are the facts here for the, we're now shifting to the slightly higher standard probable cause to arrest for the DUI. Not for the drug, I mean, not for the gun. But the question here has nothing to do with the gun or the gun charge. The second aspect here is probable cause to believe that the defendant was driving under the influence of alcohol. So, to determine whether there's probable cause, the court simply determines whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe that the defendant had committed the offense. Here's what Officer Perry knew when he walked up to the defendant. He could smell alcohol coming from his breath. His eyes were bloodshot. He was barely able to follow instructions. He couldn't stand stationary. He couldn't even sit still. I mean, Officer Perry attempted to perform the HGN test, but because he was unable to sit or stand, and because Officer Perry had been instructed not to perform field sobriety tests if he believed it was unsafe, that's why those tests were not performed. He had been instructed that the—and you can see why. If someone can't stand on two feet without staggering and falling, asking them to stand on one foot, asking them to do the heel-to-toe test is just asking for that person to fall. So, it is a reasonable thing that they had been told not to do this. It's important to note that the defendant admitted consuming alcoholic beverages that evening, and it's also important to note that he refused to take a blood alcohol test. Now, our Supreme Court in People v. Johnson has held that evidence of refusal to take a blood alcohol test is evidence of consciousness of guilt. So, that could be presented at trial to provide evidence for the finding of guilt. It certainly can be considered in a probable cause decision. Defense counsel? You've got to have probable cause, or you've got to have the reasonable suspicion to ask him to take the test. Yes. How could you use that, then, to say when he refuses to take it, to say you could have right to ask him to take it? Well, we're dealing— I think it is a—you're right. I mean, he refuses it. We're talking about field sobriety tests. The field sobriety, okay. Field, not— Field, okay. I misunderstood. No, you didn't misunderstand. I was less than clear. Okay. I got you on the field sobriety test. I was analogizing between a blood alcohol test and a field sobriety test. I understand now. Thank you. I was unclear. I apologize. For the first time here before this court, defense counsel says, well, you know they had a video. If they had that video, then we could have—he says, first of all, that all police officers say they smell alcohol and their eyes are bloodshot, and that's not enough. Well, first of all, there's a lot more than that in this case, a lot more than that. And then he goes on to—Judge, you asked him, you know, what if there was, what evidence. Well, first of all, we have a police officer that testified under oath to these things, so we do have evidence that he couldn't stand, and we do have evidence that he couldn't follow instructions. We do have evidence. As to the video, that actually came up at the hearing. And the parties, I was looking through the record this morning, the parties discussed this and said there wasn't a video, and defense counsel didn't have any objections to the fact that there wasn't a video, and everybody was just okay with this. It never was an issue below, and it cannot be an issue now. If there was a video that the state had, refused to disclose, we'd be talking about a whole different issue here. Here, it was, was there a video? No, there wasn't. Oh, okay, well, darn. That's more—it was discussed. It wasn't a problem below. It's not in any way relevant here. Finally, again, outside of his argument below, there was a discussion of People v. Sutherland, which is not cited in the defendant's brief, which deals with the exclusionary rule, an argument that's not before this court, and quite honestly, doesn't have any application to this case. We are dealing with a civil case. We are dealing with a statutory summary suspension under which the defendant carries the burden of proof, and the questions here are twofold as I've set them forward. One, was there reasonable suspicion to believe that a crime had been committed and that the defendant was the person who did it to briefly stop him? Period. That's the stop of the car. And two, once the stop was initiated, was there probable cause to believe that the defendant had been driving under the influence of alcohol? Because the evidence presented below firmly supports the trial court's very lengthy and very well-articulated order. The people of the state ask for support to affirm it. Are there any other questions? No, thank you. Rebuttal, Mr. Starman. Your Honor, it is quite clear that counsel has glossed over the fact that the original stop and arrest was made by Officer Long. He didn't testify here in his proceedings. He did not testify. On page 48 of the record, the judge made her findings on July 27, 2011. She said, Officer Kendall Perry testified. He was on duty on June 1st when he received a dispatch concerning gunshots had been fired in the vicinity of 22 and Market in East St. Louis, Illinois. This is Judge Gatz's order. He had been a police officer with East St. Louis Police Department for more than 10 years at the time of the incident. Although Officer Perry indicated that he did not see any gunshots fired, he testified that he heard gunshots shortly before the defendant's vehicle was stopped by Officer Long of the East St. Louis Police Department. Now, what did Officer Long stop the vehicle for? Now, this was not a routine stop under suspicion where you go up to a car and you say, Sir, I'm a police officer. I think that you've changed lanes or you don't have a proper license plate or your taillights don't work. Have you been drinking? Now, that's a type two encounter right there. Now, you don't grab a guy out of a car, get him out of the car and stretch him across the hood of the car and say that that's a class two encounter. That's an arrest. There's at least five cases which set forth eight points for an arrest. Number one, you're under the command of the officer, which clearly he was under Officer Long. Two, that you're not free to move about from place to place. That's here. Number three, that you're under the command of the officer and whether or not he was handcuffed makes absolutely no difference at all. He was clearly restrained and was arrested. He was arrested. He was arrested by Officer Long. Now, what was he arrested for? We don't have any idea. But it certainly wasn't from the smell of alcohol or the bloodshot eyes. It wasn't that. Officer Long never mentioned anything about knowing that the guy had had anything to drink at all. At least it isn't in the record. And it's their case, isn't it? Isn't it their case? The second thing I want to say is that the question of a civil case, it is a civil case. When you attempt to take a person's license or rescind their privilege, it is a civil proceeding. But it's also clearly based, everything in our life about restraint is based upon the Fourth Amendment. It's based upon the Fourth Amendment. When I write some restraint, as his rights were, there must be probable cause and there wasn't a probable cause. Well, if there is, what was it? It wasn't the gun in the car. It wasn't the shots fired. What was it? What was probable cause? He's clearly arrested. I mean, the judge says that. Judge Cass says that. For us to believe that this was just an inquiry or a detention, that's bunk. Thank you very much. Okay. Thank you both for your arguments this morning and this afternoon. And we'll try to get you in order as early as possible. We're going to resume.